Koehnlein *v.* Allegheny County Employees' Retirement System, Appellant.

Argued March 31, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*John P. Hester,* for appellant.

*Arthur L. McLaughlin, Jr.,* for appellee.

OPINION BY MR. JUSTICE JONES, May 25, 1953:

This appeal grows out of a declaratory judgment proceeding instituted by the plaintiff against the County of Allegheny represented by its retirement board. The question of law involved requires a determination of the constitutionality of an amendment of the county's retirement system intended to increase the retirement allowance payable to a county employee after he has been retired. The court below, holding the amendment to be constitutional, ordered the defendant to pay the plaintiff the increased amount of the retirement allotment from the effective date of the amendment. From that order the county has appealed.

By Section 312 of The General County Law of May 2, 1929, P. L. 1278, as amended by the Act of May 22, 1933, P. L. 840 (16 PS §312), each county of the second class (i.e., Allegheny County) was required to provide a retirement system and to establish and regulate a retirement fund in connection therewith. Section 313 provided that the retirement system should be under the sole direction of the retirement board which is composed of certain specified county officers.

The Act further provides how the retirement system shall be administered.

The plaintiff was an employee of the county from March 25, 1906, to March 16, 1936. Upon the termination of his employment, he applied to the retirement board for an allowance under the county's retirement system to which he had contributed as required by Section 318 of the Act of 1929, supra. The board granted the allowance effective May 16, 1936, in a monthly sum of $62.50 as determined according to the formula prescribed by Section 322 of the Act. The plaintiff has since received such allowance. By Act of January 14, 1952, P. L. 1884, Section 322 of the Act was amended to provide that "No retirement allowance hereafter paid to any beneficiary who has heretofore retired or who shall hereafter retire shall be less than seventy-five dollars ($75.00) per month . . . ." Upon enactment of the foregoing amendment, the plaintiff demanded of the retirement board that his monthly retirement allowance be increased to the $75 minimum specified by the Act as amended. The board refused to grant the increase, contending that the amendment violates Article III, Sections 11 and 18, and Article I, Section 17, of the Constitution of Pennsylvania. The appellant presses the same contentions on this appeal.

The constitutionality of the retirement system in counties of the second class provided for by Sections 311 to 326 inc. of The General County Law of 1929, as amended, was sustained by this court in *Retirement Board of Allegheny County v. McGovern et al.*, 316 Pa. 161, 174 A. 400. In answering the contention there made that the particular statutory provisions violated Article III, Section 11, of the State Constitution, which provides that "No bill shall be passed giving any extra compensation to any public officer, servant, employee . . . after services shall have been rendered

or contract made . . .", we said (p. 169) that "This act provides for retirement pay. Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay."

In the instant case, the learned court below in ostensible reliance upon the term "retirement pay" as defined in the *McGovern* case, supra, held that the plaintiff had earned the increase afforded by the statutory amendment. This conclusion was arrived at by first assuming that the "adjusted compensation", which the plaintiff had earned during his employment by the county, was the *purchasing power* of $62.50 at the time of his retirement in 1936 and then by reasoning that, inasmuch as the value of money has since depreciated, the statutory increase in the retirement allowance to $75 monthly was not a gift of "extra compensation . . . after services shall have been rendered" but merely a legislative attempt to restore to the retired employee what he had in fact earned and contracted for upon his acceptance of retirement. From the standpoint of a retired recipient's economic needs, the merit of the argument is obvious and need not be here elaborated. But, it cannot be adopted as a sound legal interpretation of what the retirement contract contemplated. By Section 322 of The General County Law, cit. supra, the retirement allowance was fixed in terms of dollars and not purchasing power. There is nothing in the provisions governing the county's retirement system to justify a retirement allowance based on earned compensation adjusted to a "cost of living" index or other standard related to the buying power of money. Without

some such provision, the argument advanced by the court below is clearly untenable.

The identical contention was recently made and rejected in *State ex rel. Thomson v. Giessel,* 262 Wis. 51, 53 N.W. 2d 726 (1952), in connection with a legislative attempt to increase the retirement benefits attaching to teaching contracts of employment after the services called for by such contracts had been fully performed and the employees had ceased to serve. The Supreme Court of Wisconsin declared the amendatory Act violative of Article IV, Section 26, of the Constitution of that State which likewise provides that "The legislature shall never grant any extra compensation to any public officer, agent, servant or contractor, after the services shall have been rendered or the contract entered into . . . ." It was the contention of the retired employee in that case that the benefits provided by the amendatory statute were "merely restoration or preservation of economic value of the compensation already granted . . . [and] that the legislature by giving the retired teacher more dollars was, as nearly as possible, giving him only the equivalent of the fewer dollars which his contract promised . . . ." In rejecting this argument, the Supreme Court of Wisconsin said, —"Unfortunately for this contention, it has long been established that the compensation is governed by the contract's terms. The purpose of Art. IV, sec. 26, Wis. Const., . . . is to limit contractors with the state to the precise compensation fixed by their contracts. The teachers' contracts for retirement benefits were contracts with the state and the compensation provided therein may not thereafter be increased by the legislature when the teaching is over. Their contract compensation was not expressed in purchasing power. Contracts can be so drawn and many of them are, whereby compensation is governed by a 'cost of living' index

or some other standard. The instant contracts, however, did not demand performance by the state in terms of goods, wares or merchandise. *Compensation was expressed in dollars and additional dollars are extra compensation, which the constitution forbids the legislature to grant"* (Emphasis supplied).

The courts of last resort of still other States have likewise held that an increase in the retirement allowances or pensions of municipal employees after they have accepted retirement and perform no further municipal services violates constitutional provisions of such States similar in nature and effect to Article III, Section 11, of the Pennsylvania Constitution. Incidentally, the courts of such States have not differentiated between a *pension* and a *retirement pay* as did this court in *Retirement Board v. McGovern,* supra. The distinction, however, is of no present materiality as the pension systems of such other States do not differ substantially from the retirement system under Section 312 of The General County Law of 1929, supra.

The case of *State ex rel. Haberlan v. Love,* 89 Neb. 149, 131 N.W. 196, well exemplifies the practical effect of the constitutional principle which inhibits a statutory increase in the retirement allowance or pension of a municipal employee after he has accepted retirement and his service to the municipality has terminated. In the *Haberlan* case, supra, a municipal fireman, who had more than twenty-one years service in the fire department of the employer city, elected in 1904 to retire and to receive the pension provided for by Chapter 39 of the Nebraska Laws of 1895. Under that enactment the pension payable to a retiring fireman was twenty-five per cent of the salary he was receiving "at the time that he goes upon such pension list." By amendment of 1909 (Comp. St. 1909, c. 30, §11 et seq.) the pension was increased to fifty per cent

of the retiring fireman's salary with a proviso that the pension should be at least $50 a month. The relator sought by mandamus to be placed upon the retired list and be paid $50 a month, "said pension [to] be dated from April 1, 1904". The respondent pension board not only disputed the relator's claim to a pension under the 1909 amendment but also under the original Act of 1895 in force at the time he accepted retirement in 1904. Section 16, Art. 3, of the Constitution of Nebraska provided that "The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into." The Supreme Court of the State held that ". . . if no part of the service was rendered subsequent to the enactment of the law, the compensation would be a gratuity forbidden by the fundamental law of the state. . . . But the relator continued in the service nine years after the law [of 1895] was enacted, and thereby earned a right to his pension under that act so long as it shall remain in force. The amendment of 1909 does not repeal the act of 1895 so as to deprive the relator of his right to a pension; but, since he rendered the state no services subsequent to the enactment of that amendment to increase his pension would violate section 16, art. III, of the constitution.

In *Porter v. Loehr*, 332 Ill. 353, 163 N.E. 689, police officers of the city of Chicago, while still in service, and the city each contributed to a pension fund under a retirement system created by an Act applicable to the city. The statute was later amended to increase the pension allowances payable. The question involved in the case was whether the amendments increasing the pension allowances payable to policemen who were already on retirement violated Section 19, Article IV, of the Illinois Constitution which provided that "The

General Assembly shall never grant or authorize extra compensation, fee or allowance to any public officer, agent, servant or contractor, after service has been rendered or a contract made." In striking down the amendments increasing the pension allowances of policemen who had already retired, the Supreme Court of Illinois said,—"The amendatory acts increasing the pensions of retired policemen do not contemplate the rendition of additional services by the pensioners. They were paid when they performed their services and the amounts of their pensions were fixed by law when they retired. . . . Since the increases in the pensions of retired policemen sought to be effected by the amendatory acts in question are based solely on the services rendered by them prior to their retirement, these increases necessarily constitute an extra allowance for past services. Such an allowance section 19 of article 4 of the constitution expressly forbids, and the amendments . . . , increasing the pensions paid to retired policemen, are therefore void." Cf. also *Sup v. Cervenka*, 331 Ill. 459, 163 N. E. 396, and *O'Neil v. Harding*, 314 Ill. 516, 145 N.E. 593.

The constitutional inhibition against legislative augmentation of municipal pensions or retirement allowances after an employee has been retired is the same as it is with respect to the original granting of a pension or retirement allowance. As to the latter, Dillon on Municipal Corporations, Fifth Ed., Vol. 1, §430, says at p. 754,—"But to be valid under constitutional requirements, the pensions must be conferred upon *persons who at the time* of receiving the right to them are officers or employees of the municipality. They cannot be conferred upon persons who had, previously to the grant, retired from the service of the city. A pension to such persons is an appropriation of public funds for the benefit of individuals, and a gift or gratuity."

The constitutional requirements contemplated by the foregoing quotation are such as were involved in the cases from foreign jurisdictions hereinabove reviewed which, as we have seen, are substantially the same as the prohibition in Article III, Section 11, of our State Constitution.

The plight of retired municipal employees because of the inadequacy of their retirement allowances in relation to the increased cost of living, particularly in the past few years, is regrettable to say the least. But, sympathy for their distress affords no justification for ignoring established constitutional restraints. If legislative inroads upon retirement funds by way of gratuitous disbursements therefrom were to be tolerated, it would not be long before retirement systems in general would be imperiled, if not destroyed, to the detriment not only of the retired employees intended to be benefited by the unconstitutionally increased retirement allowances but also of the current contributors to retirement funds who are still in the service of the municipality. The danger was recognized in *Porter v. Loehr,* supra, where it was said that "Increases in pensions to retired public officers and employees often nullify appreciably the public benefits derived from general pension laws by depleting the funds rightfully applicable to the payment of the pensions of officers and employees in the active service when they ultimately retire." The very arbitrariness of the amendatory Act here under consideration precludes any thought that it was enacted in an exercise of the legislature's power to "render intact the actuarial soundness of the system so as to strengthen its fibers . . .": *Retirement Board v. McGovern,* supra, at p. 176.

Accordingly, we hold that the Act of January 14, 1952, P. L. 1884, amending Section 322 of The General County Law of 1929, violates Article III, Section 11,

of the Pennsylvania Constitution as to employees already retired at the time of the passage of the Act and is, therefore, to that extent void and of no effect. It thus becomes unnecessary to consider whether the Act offends against the Constitution in the other particulars assigned by the appellant.

The judgment is reversed and is here entered for the defendant.