## James v. Police Pension Commission

*J. Charles Hanahue* and *Joseph E. Gallagher*, for plaintiff.

*John J. Scott*, for defendant.

HOBAN, P. J., December 30, 1953.—The action is mandamus brought by a retired regular police officer of the City of Scranton to compel the police pension commission to pay him retired pay at a rate different than that fixed by the commission at the time of plain-

tiff's retirement. By stipulation the case was tried before Hoban, P. J., without a jury. The facts were developed entirely from admitted paragraphs of the pleadings; hence are not in dispute.

## Facts

For simplicity we state the facts in narrative form and in chronological order.

Under the general powers conferred by article III, sec. 1 of the Act of March 7, 1901, P. L. 20, 53 PS §8457, the City of Scranton in 1911 created a police pension fund and entrusted its administration to a police pension commission. The ordinance (file of the council no. 47, 1911) provided for a retirement system for regular policemen or detectives. The policeman joined the fund when eligible. Thereafter he contributed one percent of his pay to the fund. The city appropriated certain moneys to support the fund and the fund was eligible to receive gifts, donations, etc. The policeman was made eligible for retirement after 30 years' service or upon incapacitation due to service causes. Upon retirement the policeman was to be paid a pension amounting to one half of the salary which the policeman received from the city at the time he ceased from active duty in the bureau of police. If the fund should be so depleted as to prevent the payment in full of pensions to those entitled thereto, then the commission was authorized to reduce all pensions in a proportionate ratio.

William James, this plaintiff, having become a regular member of the police department, hence eligible for membership, was accepted into the police pension fund on December 2, 1914. The Pension Fund Ordinance was amended in 1915 (file of the council no. 66), in 1917 (file of the council no. 14) and in 1919 (file of the council no. 72) in ways whch were immaterial to the rights of this plaintiff. In 1936, however, by

file of the council no. 3, the Council of the City of Scranton enacted a complete new ordinance providing for a police pension fund and for its administration, which ordinance repealed all ordinances or parts of ordinances inconsistent therewith. The new system continued the one percent of salary payment by members of the fund, provided for the continuance of the members of the police pension commission and the appointment of their successors, and generally re-enacted the basic provisions of the Ordinance of 1911 as amended through 1919. However, the Ordinance of 1936 made this significant change from the previous system. All pensions payable to policemen or detectives who were members of the bureau of police retired after the passage and approval of the Ordinance of 1936, shall be one half of the fixed salary of the policeman or detective at the time he ceased active service in the Bureau of Police, provided, however, that the maximum pension to be paid to any retired member of the bureau shall be $100, and provided further that the retiring policeman should have held his retirement rank for a period of not less than one year or more of full and continuous service previous to retirement. Otherwise his pension rank would revert to the previous rank which he had held for a period of one year.

In 1950 by Ordinance (file of the council no. 4) the maximum pension was raised to $110 per month for those retiring after the passage of the ordinance.

William James, this plaintiff, after 37 years and 6 months of full and continuous service as a regular member of the bureau of police, ceased to be an active member of the bureau of police on June 1, 1952. On that date his rate of pay from the bureau was $300 per month. Thereafter, plaintiff applied to the police pension commission for retirement allowance. The commission granted him retirement pay at the rate of $110 a month from June 1952.

In 1953 by Ordinance (file of the council no. 2), by another amendment to the Ordinance of 1936, the council eliminated the maximum money limitation of $110 per month and provided that "on and after the effective date of this Ordinance all policemen, detectives and officers who have proper Civil Service certification, and who are retired from duty from the Bureau of Police, shall receive a pension at the rate of one-half the respective monthly salary at the time of retirement."

### Discussion

In the complaint this plaintiff pleads his cause of action in the alternative. His theory under the first count is that his rights were fixed by the Ordinance of 1911, which governed the pension fund situation at the time he joined it in 1914. Once he joined the fund he acquired as to it a contractual, or at least a quasi-contractual status entitling him upon retirement after the appropriate service to retired pay at the rate of one half of his last pay in active duty status. Any amendments or changes to the basic ordinance or to the system as a whole, in derogation of his rights, would be invalid.

In the alternative he pleads that the Ordinance of 1953, regardless of the limitations imposed by the Ordinance of 1936 as amended, would apply to plaintiff as a retired officer and would entitle him to retirement pay at one half of the last active service pay, at least from February 1, 1953, the effective date of the ordinance.

I am of the opinion that the plaintiff in count 1 of the complaint has stated a good case, and since the facts are undisputed a decree must be entered in his favor. There seems to be no doubt from all the cases that plans similar to the one under consideration are not considered as pension plans in the sense that they provide for gratuities to municipal employes but pro-

vide for a system of retirement pay, deferred pay or adjusted compensation for past services, and hence are really earned by the employe who has contributed to the fund in accordance with the terms and conditions under which it was operated at the time of his entrance into membership of the fund, the plan, the association or other administrative agency which is charged with its management. Nor does there seem to be any doubt that the right of the employe to participate in the fund is one based upon contract, that is, a contract between the employe and the public agency which employs him and which as an inducement to employment and as a condition thereof offers him an opportunity to participate in such a retirement pay plan. I think it is obvious that the terms of the contract are those which are set at the time of his employment and entry into the plan. If, therefore, a contract has been established as of that particular time, the contract cannot be changed without the consent of the parties thereto and certainly the employe by his contribution to the plan, as well as the contribution to the municipality of his services, has supplied the ordinary contract requirement of consideration.

A good deal of the argument of counsel turns about the nature of the contract, whether it was executory in nature or was inchoate and not to be considered as a complete contract until the employe had performed all the conditions essential to collect the benefits payable thereunder, including the serving of the time provided for in the articles controlling the plan, in this case the rules and regulations provided in the various ordinances establishing the pension fund. However, that may be, whatever rights plaintiff had were based upon contract and one party to the contract could not change the terms without the consent of the other. There is no valid argument that the employe consented to a change of plan here because he continued to pay

contributions to the pension fund as established by the Ordinance of 1936 without protest. See Kane v. Policemen's Relief and Pension Fund of Pittsburgh et al., 336 Pa. 540.

There seems to be no appellate court decision in Pennsylvania on the exact state of facts presented here. However, Kane v. Policemen's Fund, supra, clearly recognizes the contractual basis of the undertaking between the policemen and the pension fund and that his contract right became vested, even before the accomplishment of all the conditions entitling him to a pension, and that his rights could not be changed except by mutual consent. Kane v. Policemen's Fund, supra, presents an even stronger case than we have here for in that case plaintiff, on the establishment of a new fund to replace an old retirement fund, signed a waiver of his right to receive a pension other than a death benefit from the old fund and accepted the restricted conditions of the new fund. The Supreme Court held that all Kane did was to waive his right to look to the old fund as the source of his retirement pay and merely accepted the new fund as the exclusive source of that payment, but did not thereby waive his right to be paid what was his due. In this case there is no evidence that plaintiff herein waived anything.

To summarize, therefore, we hold that the right of plaintiff herein to participate in the pension fund was fixed as of the date of his entry into the fund and the conditions of such entry as they existed at that time; that such right could not be changed except by mutual consent, and that in this case there is no evidence of such mutual consent. His right to a pension ripened upon the fulfillment of his years of service and according to his contract he was entitled to receive retirement benefits at the rate of one half of his last active duty pay.

As to count 2 in the complaint, I am of the opinion that standing alone it could not support a judgment, for to hold that it could would be to support the theory that the original contract could be changed by unilateral action of the city government, certainly to the disadvantage of other members of the fund. Their rights were fixed by the contracts they entered into at the time of their employment. I think that the Ordinance of 1953 can be read only as applying to those who retire after its effective date. Under this theory I hold that the discussion as to the effect of Koehnlein v. Allegheny County Employees' Retirement System, 373 Pa. 535, and the restrictive provisions of article III of the Pennsylvania Constitution as applicable to municipal ordinances are not in point.

## Conclusions of Law

1. The appointment of plaintiff as a regular member of the uniformed police force of the City of Scranton and the subsequent entry into the police pension fund of the City of Scranton on December 2, 1914, under the terms and conditions of the Ordinance of 1911 (file of the council no. 47) of the City of Scranton established a contractual relationship between plaintiff and the defendant, police pension fund, as then constituted.

2. The present Police Pension Commission, by the terms of the Ordinance of 1936 (file of the council no. 3) succeeded to the rights and duties of the Police Pension Commission established by the Ordinance of 1911 (file of the council no. 47).

3. The essential terms of the contract between plaintiff and defendant were that plaintiff was to make during the course of his employment a required contribution of one percent of his salary to the police pension fund, to serve 30 years as a regular member of the uniformed police force of the City of Scranton,

to complete his services therein creditably and at the end of that time or thereafter, upon ceasing with honor to be a member of the regular police force, he was to be entitled to retirement pay at the rate of one half of his last active duty pay.

4. The action of the Police Pension Fund of the City of Scranton in allotting to plaintiff retirement pay as of June 1, 1952, at the rate of $110 a month was a breach of the existing contract between plaintiff and defendant, plaintiff having theretofore complied with all the conditions necessary to entitle him to appropriate retirement pay from the police pension fund.

5. Plaintiff is entitled to be reimbursed from the police pension fund for the difference between the amount paid him at the rate of $110 per month from June 1, 1952, and $150 per month, being one half the rate of his last active duty pay prior to retirement.

6. Plaintiff is entitled to be paid from the police pension fund in the future, retirement pay at the rate of $150 per month.

### Judgment Nisi

Now, December 30, 1953, it is hereby ordered, adjudged and decreed:

1. The Police Pension Commission of the City of of Scranton is directed to pay from the police pension fund of the city to plaintiff the sum of $720, being the difference in the retirement pay due and owing from the fund to plaintiff and that which was actually paid to plaintiff for the months from June 1, 1952, to November 30, 1953.

2. Defendant, police pension commission, is directed to pay to plaintiff from December 1, 1953, and thereafter so long as plaintiff shall remain eligible for retirement benefits from said fund, the sum of $150 per month.

The prothonotary is directed to give notice of the entry of judgment nisi. Exceptions to be filed within thirty days sec. leg; otherwise judgment to be entered as of course.